Good morning, Your Honors. May it please the Court, my name is Mark Eisenberg, and I represent the plaintiffs and appellants in this proceeding, Rafael Garcia Miranda and his wife, Olga Martha Garcia. As the Court is no doubt aware, the issue presented on appeal is a narrow one. It is a question of whether the District Court erred and abused its discretion at the lower level in failing to give the plaintiffs the requested adverse inference instruction they were seeking with reference to the destruction of two video interrogations that were conducted of Mr. Miranda with reference to allegations that he brokered a murder-for-hire of a California corrections officer some 14 years before. The evidence in this case was that Mr. Miranda was arrested by the L.A. County Sheriff's Department, turned over to the Anaheim Police Department, and it was at the Anaheim Police Department where these interrogations of February the rationale and criteria of residential funding with respect to the giving of adverse inference instructions, and give adverse inference instructions where it is shown that the destruction of evidence is the result of either . . . Well, let me ask you about that, because I'm trying to figure out exactly what residential funding states and what it requires, because if we assume that the District Court properly applied this residential funding and that the residential funding requirements are met here, would that require the court to issue an adverse jury instruction or merely permit the District Court to issue an adverse jury instruction? I believe it would require . . . Tell me why and what your authority is for that. My belief is that it would require the granting of an adverse inference instruction in instances where there is evidence of a deliberate act or negligence that has resulted in the destruction of evidence that is material to the claims being asserted by one party or another. My reading of the case in the court on March 2, 2015, laid out the elements of residential funding, what it wanted to see from the plaintiffs, and the plaintiffs established each of those elements by and through the testimony of the defendant, Darren Wyatt, himself. Well, the District Court said it could have. I'm sorry. The District Court said it could have given the instruction, but it declined to do so because there was no bad faith or any deliberate destruction, knowing destruction of evidence as I read it. You opened your argument by saying whether there was an abuse of discretion. Correct. I'm just wondering how do you get to your Let me see if I can be a little clearer. With reference to whether or not the destruction was deliberate or negligent, and hence requiring an adverse instruction, is a question of fact for the jury. It is not a question to be determined by the District Court. It is not a question to be determined by this court. In other words . . . No, the question of whether or not the instruction concerning the inference is given is a question for the court. It is, but it has to be based upon underlying facts, and the facts in this case made clear that the destruction of evidence could have resulted and may well have resulted from a deliberate act as opposed to negligence. The District Court concluded there was nothing maligned, I think is what he said, in the DVR. How is that clearly erroneous? What was maligned about the erasure based on the testimony that was before him, and that's before us now on the record? I think the question of whether it was maligned was one that should have been placed to the jury, but factually, the evidence before the court was that Detective Wyatt had been a detective for some twenty years, had never failed at any time to make recordings of interrogations he conducted in murder cases. He also failed in this instance to prepare reports concerning . . . I mean, we don't know about the whole structure here in terms of what was presented to the District Court, and he made credibility findings because you had the detective testify, the guy who was in charge, the police official who was in charge of trying to maintain these videos, but the detective testified he had been working sixteen hour days. They were trying to cut down their backlog on these cold cases, and he just forgot to go back and save it. I understand you can make an argument to the District Court, and it looks like you did, that that somehow supports intentional, but the District Court made a determination He saw the people testify regarding all of this and said, you know what, there's nothing maligned about it. I'm trying to figure out how we get to where you are, especially when I think we have to give a lot of deference to the District Court in fashioning a sanction. He did say, you know, I'm going to let the jury hear about all this, and I think a District Court could have said, you know what, I'm not because that would just confuse the issue and I don't think that there's any there there, but he said I'm going to let the jury hear what happened and they can make their own determination. It wasn't the sanction that you wanted, but that was a sanction that he could fashion within the law. The District Court had also concluded previously that the destruction of the tape clearly prejudiced Miranda, as evidenced in his order of March 2, 2015, and further concluded that the audio defense proffered in evidence were no substitute for the video recordings that were destroyed. Well, that's true, and told the jury that, and enabled . . . did you try the case? Yes, I did. And enabled you to argue all of this to the jury? And I did argue it to the jury. And the jury didn't . . . looked at the evidence and didn't make the adverse inference, I take it, but that was its choice? They weren't given any guidance with reference to adverse inference because the court declined to provide the instruction. So my argument had to be limited in such a fashion so as not to provide an instruction that the court had already indicated it would not give, whereas defense counsel sort of ran with that and told the jury, hey, you got the audio tapes, you can't hear anything there, and this is the most important evidence in this case, when in fact the most important evidence was the videotapes, which just about every member from APD said would have clearly depicted the kicking and the pressing of the head against the table. But they had the audio tapes, which there was testimony that you could have heard a cough or whatever. I mean, it was a very sensitive mic. That was argument by defense counsel. I know, but that's what the district court heard in making its determination. I think it's just a tough spot here because I think you did everything you could have below, and you argued admirably on behalf of your client that the jury could be very suspicious of what happened, but I'm not sure that you've established that there was a requirement for the district court to impose the adverse jury instruction as a sanction. It was a possibility, and it seems clear that the district court fashioned a lot of different things to communicate to the jury, and it did. It didn't just say, hey, no, I'm not going to let anything like this come out. Can you name a case in which we've held that a district court abused its discretion by not issuing an adverse jury instruction as a sanction? I cannot. No. Okay. With that, thank you. Do you want to reserve your time? Yes, Your Honor. Okay, thanks. Good morning, Your Honors. My name is Moses Johnson. I'm an assistant city attorney. I'm here on behalf of appellee Detective Wyatt. To answer your question as to what residential funding held, it said the sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence. Detective Wyatt candidly admitted on cross-examination that it was his fault, but it was only negligence. He was working seven murders, 16-hour days for two weeks, and he simply forgot to do this. Talk to me about the timing here, though. I mean, was the police department on notice? Was the suit filed before the destruction? No, but a claim had been filed. A claim had been filed? Yes. So what's the claim has been filed? Why didn't you all do whatever you could to preserve the evidence? They thought it had been preserved. It shouldn't. Actually, the department has its own internal requirements. In homicide cases, this stuff is supposed to be preserved forever. There was a mistake made. I'm not going to say there wasn't. There was a mistake. Let me make sure I understand what happened. The detective was supposed to make a recording of the interrogation. It was supposed to make a CD or something. He was supposed to burn the video to a CD, and he didn't do it. And he didn't do it, and he testified he was busy. Then later, the original tape of the proceedings were destroyed after requesting whether there's any reason we need to keep this. Correct. The detective didn't get that notice, I take it, because he was someplace else. That was his testimony. He had been transferred to patrol. He had been elevated to a sergeant, became a patrol sergeant. He was no longer in the homicide division. It was his testimony. He didn't get that email, and it was also his testimony. Even if he got it, he had forgotten that he didn't do it, and he thought he had done it, so he wouldn't have done anything differently. And the fellow who destroyed it, I take it, thought that it had been perpetuated in a CD. Correct. Where his mistake was he should have done it immediately after, and because he was busy, he set it to the side and then forgot. So the mistake was the detective's in not burning the CD. It was the detective's mistake, and he admitted that. What has the department put anything in place since this happened to make sure that when someone files a claim, which gives you notice, and which you had here, which is disconcerting, actually. We had a duty to preserve, Your Honor. I agree. And so what have you done since then? We put out litigation holds as soon as a claim comes in. In this instance, it shouldn't even matter that a claim was filed. For a homicide case, they're supposed to preserve these types of interrogations forever. But especially when there's a claim. Even more especially, but for the criminal proceedings, it should have been preserved for that alone, Your Honor. We had a duty to preserve. I don't dispute that. And even the new federal rules don't really change that. What the new federal rules change is what the sanctions are, and they reject residential funding saying mere negligence is sufficient. But even going back to residential funding, which was the case on point that the district judge relied, it's discretionary, and this is an abuse of discretion. I don't think the judge was out in left field when he said, after hearing all the testimony, and I made everybody listen to the four hours of audio where you could hear somebody, including Mr. Miranda, drinking water out of a bottle of water just like you have. You could hear the clink because he's actually handcuffed to the bar under the table. Those mics were very sensitive. Would the video be better? Sure. I'm not going to dispute that, but I think the audios were a more than adequate substitute. The judge let plaintiff's counsel, Detective Wyatt was on the stand for like two days. Plaintiff's counsel did a great job cross-examining him and arguing it to the jury. The jury just didn't buy it, and it's his discretion to make that call as to whether to give the instruction. It's not a question of fact for the jury. He could have gone the other way, but he chose not to because he believed, after listening to all the evidence, that there was nothing malicious about this. It was mere negligence at best. And, again, I don't dispute that we had a duty to preserve that, and we just made a mistake. You mentioned that new rule, 37E. Yes, it's a revised rule, I guess. Correct. Given that that was published after this case was decided and given that, I think it's 2074, 28 U.S.C. 2074, permits application of new rules only to proceedings then pending. Was Rule 37E applicable at the time of this case? No. This case was tried before. However, the Chief Judge, in his order, adopting the new rule, said it basically should apply to any cases pending if it's just impracticable. If we remanded, could the district court then, upon remand, apply . . . would it apply the new Rule 37E, intent standard, or the old rule? I think he'd have to apply the new rule because then now we're before trial. So even if layoff's counsel got what he wanted, we would go back and he'd say, well, but the new standard is negligence insufficient, so I wouldn't give that instruction anyways. I don't have the new rule in front of me, but can't you still give an adverse inference instruction when there's not a finding of deliberate conduct, but it's a you-may-consider-this-to-the-jury type of instruction for what it's worth type? There is in Apple, and I believe in my trial brief, which wasn't part of the record, what I'll call a mild adverse inference instruction. And basically the last line of that instruction, which doesn't tell the jury they have to make any adverse inferences, it says something along the lines of whether this fact is important to you in reaching a verdict in this case is for you to decide. But that's, in effect, what happened here. We both got to argue it, and I didn't even argue it very strongly. I just said my client was super busy at the time. He was working seven murders, 16 hours a day for two months straight, and he candidly admitted he forgot to do it. He was negligent, but he didn't do it to hide evidence. If he did, why would he preserve all the audios as well? And remember, it wasn't just his testimony. The homicide sergeant was monitoring these video interrogations in his office. Did he see 100% of it? No, but his testimony was he saw 95% of both of these interrogations, and he saw nothing improper going on. So it wasn't just detectives. I'm sorry, go ahead. Did you finish your thought? Yes. Go ahead. Did you have thoughts on plaintiff's counsel's perspective that whether or not it was a deliberate act as a question for the jury and was not one for the trial judge? Even under residential funding, it's the district judge's call whether to give this instruction or not. It's not a pure question of fact that always has to go to the jury. So he's wrong on that. And that's what residential funding says on I can't find the page number. I believe it's 108. All right. Thank you. So unless you have any other questions, that's really all I have. Thank you. Thank you. Thank you. The video evidence in this case was destroyed three months after the governmental claim was asserted. Counsel keeps talking about mistakes, but the reality is if the acts completed that occurred and occurred on a videotape that captured this, this particular detective would be very motivated not to copy those tapes and not to prepare reports that might invite someone else to look at those tapes. I believe that the evidence established at trial that there was a sufficiency that this was culpable conduct of an intentional nature, and I think that's supported by the fact that when the governmental claim was received in the name of Wyatt, they had three months to preserve that, and they didn't, and they didn't because although Detective Wyatt had moved to another division or detail within the department, the testimony at trial was by Sergeant Perea that the email was sent out to everyone in the department handling homicide cases, and Detective Wyatt conceded that he was. If he wanted to conceal his actions as alleged by the plaintiff back on February 3rd and February 6th, 2012, one sure way to do that would be to hold off or not respond to that email by Detective Perea because that then would ensure the destruction of the tape. So are you now arguing that the district court was wrong when he said that there was nothing, no bad faith here? Yes. In fact, that's my point that it abused its discretion because I think that the plaintiffs met their burden of establishing something more than human. No, that would be a fine, but he said he made what amounted to a finding of fact that there was no deliberate destruction or bad faith. And I think that the evidence actually considered in totality made it very clear that one could reasonably conclude, not that they would, but that this was a deliberate action by this investigator to ensure this evidence was buried. And I remind the court, as I have a moment left, that this is somebody who had been on the force for years, and this is the only instance in his entire career where he didn't copy tapes. It's the only instance at APD where a recording of a videotape interrogation was lost. And the question is . . . And you were able to make that argument to the jury, I'm sure, very effectively. I tried to. Thank you, and I submit. Thank you. Thank you both, Mr. Johnson, Mr. Eisenberg. We appreciate your presentations here this morning. The matter of Miranda and Garcia v. Wyatt is now submitted. That concludes our docket here today and for the week. We are adjourned. Thank you. All rise.
judges: Schroeder, Murguia, Gleason